**John F. JONES, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 86–1793.**

United States District Court, D. Kansas.

Sept. 30, 1988.

**1416**

David H.M. Gray, Gragert, Hiebert & Gray, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## OPINION AND ORDER

THEIS, District Judge.

This case is presently before the court on defendant's motion to affirm the Secretary's decision and the plaintiff's motion for summary judgment. Plaintiff seeks a ruling that he has been disabled and entitled to benefits since January 27, 1985. By order dated October 21, 1987, the court remanded the action to the Secretary. The court ordered the Secretary to fully articulate his reasons for finding the plaintiff's testimony to be incredible and to reexamine the application of the grid regulations. On remand, the Appeals Council accepted additional exhibits and issued a five page decision denying plaintiff's application for benefits and explaining its witness credibility findings. This decision now stands as the final decision of the Secretary.

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ..." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is not the duty of the court to reweigh the evidence. *Garrett v. Califano*, 460 F.Supp. 888, 890 (D.Kan.1978); *Manigan v. Califano*, 453 F.Supp. 1080, 1086 (D.Kan.1978). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. It is the court's duty to scrutinize the entire record to determine whether the Secretary's conclusions are rational. *Keef v. Weinberger*, 404 F.Supp. 1193, 1196 (D.Kan.1975). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

Since the Appeals Council rejected the findings of the Administrative Law Judge (ALJ), additional principles apply. The decision of the Appeals Council constitutes the final decision of the Secretary; there-

fore, the court must determine whether the Appeals Council's decision, not that of the ALJ, is supported by substantial evidence. *Fierro v. Bowen,* 798 F.2d 1351, 1355 (10th Cir.1986), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 789 (1987). However, when the Appeals Council overturns the ALJ's decision awarding benefits, and, in so doing, rejects the ALJ's assessment of witness credibility, the Secretary must fully articulate his reasons. The court, using heightened scrutiny, must then decide whether such reasons find support in the record. *Id.*

Plaintiff was born on July 17, 1941, and is currently 47 years old. He has an eighth grade education and has previously worked as a welder, punch press operator, service station operator, and self-employed metal dealer. In his application for benefits, plaintiff claimed that he was disabled due to a heart condition. Following a hearing, the ALJ found plaintiff to be completely disabled and entitled to benefits. The Appeals Council, on its own motion, reviewed the ALJ's decision, determined that plaintiff was capable of performing sedentary work, and reversed the ALJ's award of benefits. On remand from this court, the Appeals Council reaffirmed its decision denying benefits.

The facts may be summarized as follows. Plaintiff underwent triple bypass heart surgery on November 5, 1976, with grafts to the left anterior descending coronary artery, the diagonal branch artery of the left anterior descending coronary artery, and the right main coronary artery. He was able to work after recovery from the surgery. On January 27, 1985, plaintiff experienced a recurrence of chest pain. He was hospitalized from January 31 to February 2, 1985. The discharge diagnosis was angina pectoris with a history of coronary artery disease, hypertension, and tobacco dependence. R. 115–17.

On February 5, 1985, plaintiff was hospitalized and on February 6 he underwent a diagnostic heart catheterization and angioplasty performed by Gregory F. Duick, M.D. Dr. Duick diagnosed unstable angina pectoris secondary to atherosclerotic heart disease, hypercholesterolemia, chronic bronchitis, and essential hypertension. Dr. Duick recommended that plaintiff try to control his cholesterol and blood pressure and quit smoking. Plaintiff was discharged February 6. R. 134–36. Plaintiff was hospitalized from February 11 through February 15, 1985, for exercise treadmill testing and follow-up evaluation. The treadmill test and an EKG were both clinically positive for exercise induced ischemia and a moderate exercise impairment. Dr. Duick repeated his previous diagnosis and continued plaintiff on his prior medication, which included Verapamil, Nitroglycerin patch, and Zantac. R. 154–55.

Richard A. Steckley, M.D., an associate of Dr. Duick, conducted a follow-up examination of plaintiff on March 5, 1985. Plaintiff reported one episode of chest pain since February 15, which was relieved with a Nitroglycerin tablet. Dr. Steckley noted that plaintiff was back at work in the scrap metal business and lifted 60 to 70 pounds frequently. Dr. Steckley felt that plaintiff had stabilized and recommended that he walk two miles per day at least four times per week. R. 165. On April 2, 1985, plaintiff underwent a treadmill stress test. The test was clinically negative for ischemia, but his EKG was positive for exercise induced ischemia. Dr. Steckley restricted plaintiff from heavy lifting. R. 166.

On July 24, 1985, plaintiff underwent another follow-up evaluation. He reported a frequency of chest pain of four times per month, which was relieved with Nitroglycerin. A treadmill stress test was clinically negative but electrocardiographically positive for exercise induced ischemia. Dr. Duick concluded that although plaintiff experienced angina, medical management permitted him to remain reasonably active. Dr. Duick advised plaintiff to continue on his current medications and to report any untoward changes in his condition. R. 179

Dr. R.L. Ward, plaintiff's general practitioner, submitted three letters in which he concluded that plaintiff was permanently disabled. R. 434, 442, 454. In the third letter, however, Dr. Ward stated, "I would suggest that the strongest evidence of

your complete disability would come from your cardiologist who treated you." R. 454.

In challenging the Secretary's decision, plaintiff alleges that the Appeals Council erred in several respects. First, plaintiff contends that the Appeals Council erred in finding his complaints of chest pain to be incredible. Pursuant to the court's remand order, the Appeals Council explained its reasons for rejecting the ALJ's credibility findings, based on the medical evidence and the level of medical care sought. R. 445–49.

In 1976 plaintiff underwent triple bypass surgery with excellent results. The next evidence was plaintiff's admission to the hospital from January 31 through February 2, 1985 with complaints of chest pain following strenuous work activity. The pain subsided with treatment. Plaintiff had two brief hospital admissions in February 1985 under the care of Dr. Duick. A diagnostic catheterization showed some progression of the disease in the areas previously bypassed and some new disease, with 80% stenosis, in the right coronary artery. Angioplasty of the newly stenosed area of the right coronary artery was performed.

In March 1985, upon his visit to Dr. Steckley, plaintiff complained of only one episode of chest pain which was promptly relieved by Nitroglycerin. Plaintiff told Dr. Steckley that he was having no other problems even though he was lifting 60 to 70 pounds frequently in his scrap metal business and was not wearing his Nitroglycerin patch daily. Upon plaintiff's April 2, 1985 visit, Dr. Steckley cautioned plaintiff about heavy lifting. On July 24, 1985, plaintiff reported to Dr. Duick that he had been experiencing chest pain only on lifting, about four times a month. Plaintiff has not seen either cardiologist, Dr. Duick or Dr. Steckley, since this time.

■ Plaintiff did not see a doctor again until his visit to Dr. Ward, a family practitioner, on December 30, 1985. Plaintiff saw Dr. Ward again on January 6, May 22, and October 9, 1986. There is no further medical evidence until Dr. Ward's letter of December 30, 1987. The Appeals Council concluded that, although plaintiff suffers from a serious heart condition, his complaints of pain are not consistent with the level of medical care sought. Further, plaintiff's pain is relieved by Nitroglycerin. The Secretary has fully articulated his reasons for disbelieving plaintiff. The court has carefully examined the record in this case and the Secretary's reasons are supported by the record.

Next, plaintiff contends that the Appeals Council erred in rejecting the opinion of his treating physician, Dr. Ward. The well established rule in this Circuit is that the Secretary must give substantial weight to the opinion of a claimant's treating physician, unless there is good cause for rejecting it. The treating physician's opinion may be rejected if it is brief, conclusory, and unsupported by medical evidence. However, if the opinion of the treating physician is to be disregarded, the Secretary must set forth specific, legitimate reasons. *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987).

On remand, the Appeals Council explained its reasons for rejecting the opinion of plaintiff's treating physician. Dr. Ward's notes show that he examined plaintiff for the first time on December 30, 1985. R. 459. Dr. Ward examined plaintiff again on January 6, 1986, and wrote a letter stating that plaintiff was completely disabled. R. 457, 434. Dr. Ward examined plaintiff again on May 22, 1986 and wrote a second letter stating that plaintiff was completely disabled. R. 456, 442. Dr. Ward examined plaintiff again on October 9, 1986. R. 455. There is no further medical evidence from October 1986 until Dr. Ward's December 30, 1987 letter, which states that the best evidence of plaintiff's disability would come from plaintiff's treating cardiologist. R. 454. The record does not reflect whether Dr. Ward examined plaintiff prior to writing this letter. The Appeals Council rejected Dr. Ward's opinion because his office notes contain mainly a recitation of plaintiff's history and complaints and descriptions of medications, and lack any meaningful examination findings.

The court finds that the Appeals Council had good cause for disregarding Dr. Ward's opinions. Dr. Ward had treated plaintiff for only a brief time when he wrote the first letter. The letters were brief and conclusory. Dr. Ward did not testify at the hearing to explain his conclusions. His office notes do not reflect whether he conducted complete physical examinations of plaintiff. There are no office notes of any exam prior to the final opinion letter. Dr. Ward did not discuss any tests that either he or any other doctor performed. *See Frey v. Bowen,* 816 F.2d 508, 513–15 (10th Cir.1987). Further, while Dr. Ward's third letter recommended that plaintiff's treating cardiologists would provide the best evidence of plaintiff's disability, neither Dr. Duick nor Dr. Steckley have opined that plaintiff is disabled. Thus, the Appeals Council properly disregarded Dr. Ward's opinion in favor of the medical evidence of record.

Plaintiff's final claim of error is that the Secretary improperly applied the grid regulations, since plaintiff suffers from nonexertional impairments. The Appeals Council found that plaintiff had the residual functional capacity (RFC) to perform a full range of sedentary work. The grids directed the conclusion that plaintiff is not disabled. The grids cannot be applied conclusively, however, if the plaintiff's nonexertional impairments significantly limit his ability to perform the full range of work in the RFC category. *Williams v. Bowen,* 844 F.2d 748, 752 (10th Cir.1988). When the plaintiff suffers from both exertional and nonexertional limitations, the grids provide no more than a framework for determining disability. The decision maker must determine if the claimant's work capability is further diminished by the nonexertional limitations. *Id.*

On remand, the Appeals Council found that plaintiff had the RFC for sedentary work and suffered from no nonexertional limitations which would further limit that capacity. In evaluating plaintiff's claims of pain and shortness of breath, the Appeals Council considered not only the subjective statements of the plaintiff, but also the lack of regular contact with a doctor and the admitted effectiveness and side effects of the Nitroglycerin. *See Luna v. Bowen,* 834 F.2d 161, 165–66 (10th Cir. 1987). The Appeals Council's decision regarding plaintiff's credibility and rejecting the opinion of the treating physician is supported by substantial evidence. The other relevant facts in the record do not establish that plaintiff's work capability has been further diminished by his nonexertional limitations. For all the foregoing reasons, the court finds that the Secretary's decision is supported by substantial evidence.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that the Defendant's motion to affirm the decision of the Secretary is hereby granted.